If creditors proving to a large amount shall, by writing, request that Cyrus Cadwallader act as agent of the receiver to collect any rents, and the receiver shall concur in thinking it is, under the following limitations, expedient, he may, on Cyrus Cadwallader's giving bond, properly conditioned, with sufficient continuing surety, in five thousand dollars, give him orders, never at any one time, in the whole, exceeding that amount, on particular tenants, to pay designated sums, for which, or for their application as the receiver may by writing direct, Cyrus Cadwallader, shall account weekly or oftener if required. As to the defendant, Satterthwaite, the receiver may, if he see cause, do the like on like conditions, provided that he may, in his discretion, as to this defendant, dispense with the consent of creditors if the other conditions are fulfilled. As to the defendant, Michener, I do not see, at present, any sufficient reason to make any order. As to him the application may be renewed if necessary. It would be granted now if he appeared to stand in any relation enabling him under any pretense of right to collect any of the rents. Any party may apply for directions at any time. These orders may require modification, as the case has not been developed. They will be certified to the court of bankruptcy.

The following order was then read: This case having been heard upon the application of the complainants for an injunction restraining certain defendants, until further, from collecting any rents from real estate in which the Franklin Savings Fund Society, bankrupts, have any legal or equitable interest, the court, upon consideration, grants the injunction so to restrain the defendants, Cyrus Cadwallader and Benjamin Satterthwaite, and each of them, their and each of their agents and servants. And Edwin T. Chase, Esq., is appointed receiver for the limited and special purposes defined in the court's opinion of this date.

KEENE (CENTRE v.). See Case No. 2,553.

KEENE v. CLARK. See Case No. 7,644.

## Case No. 7,641.

### KEENE v. COOPER.

[2 Cranch, C. C. 215.] [1]

Circuit Court, District of Columbia. Nov. Term, 1820.

WRIT OF INQUIRY—PLAINTIFF'S AFFIDAVIT— AMOUNT OF DAMAGES.

In executing a writ of inquiry in Alexandria, the plaintiff's own affidavit may be read in evidence of the amount of the damages.

On executing the writ of inquiry in this cause, Mr. Taylor, for plaintiff, offered in

[1] [Reported by Hon. William Cranch, Chief Judge.]

evidence, to ascertain the amount of damages, the plaintiff's own affidavit.

Mr. Swann opposed it; and said that the practice of the court was to allow it only in cases where the defendant does not contest the amount of damages.

Mr. Taylor, in reply. If the rule be not uniform and general, the plaintiff cannot know when he may safely execute his writ of inquiry. There is no appearance of defendant upon the record.

THE COURT (MORSELL, Circuit Judge, contrà,) said that the practice had been uniform in Virginia, and here, and permitted the plaintiff's affidavit to be read.

KEENE v. The DAVID REEVES. See Case No. 6,625.

## Case No. 7,642.

### KEENE v. HARRIS et al.

[3 Wash. C. C. 178.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1812.

REAL PROPERTY—TITLE BY SETTLEMENT—CLAIM UNDER ANOTHER STATE.

Under the law of Pennsylvania, the defendants, who claimed by settlement and improvement, had no title, if such settlement and improvement were made under the title of Connecticut.

The lessor of the plaintiff claimed, under a lottery warrant, dated 17th of May, 1785, the land in dispute lying on the east side of Tioga river, adjoining the New-York line, being part of the purchase made from the Indians on the 23d of October, 1784. It was surveyed in September, 1786, and a grant made for it in May, 1788. The defendants [Harris, Sheppard, and Stevens] claimed under a settlement and improvement, commenced in the latter end of the summer, or early in the autumn of 1784, by one Joseph Thomas, who, in 1793, conveyed his right to one Swift, who conveyed to Harris the part of which he is in possession. The settlement and improvement were proved, and the question of fact was, whether the original settlement and improvement were made under the Connecticut claim, to this tract of country? The evidence was very strong to establish the affirmative.

Mr. Binney, for plaintiff.

By an act of the legislature of Pennsylvania, all conveyances of land lying in the part of the state where the land in question is situated, which do not, on the face of them, acknowledge the title of Pennsylvania, are declared to be void. This acknowledgment not being made in the deeds under which the

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

defendants claim, they are, of course, void; and the defendants must rest their title upon the settlement of Thomas. The inception of this title, being prior to the purchase from the Indians, could give no right whatever to Thomas, and was a violation of the laws of this state; which, for political reasons, prohibited settlements on the Indian lands, under heavy penalties, extending at one time to death. 2 Laws (Smith's Ed.) 123, 113, 119, 126, 124, 127; 1 Bin. 248. If the original settlement was against law, the continuance of it after the purchase from the Indians, can give no title; or otherwise, a settlement, though originally unlawful and even criminal, would be sufficient to defeat the right of a purchaser under the state. By no means could such a settler effectuate his title, but by obtaining, within a reasonable time after the purchase, a warrant from the state, and proceeding afterwards to have it surveyed, and to obtain a grant. 2 Laws (Smith's Ed.) 129.

By the act of 21st December, 1784,—2 Laws (Smith's Ed.) 273,—no right by settlement, to the lands purchased from the Indians, could be acquired, except a right of pre-emption; and not even that, unless the settlement was made before the year 1780, nor unless application for the same were made, and the consideration paid, on or before the 1st of November, 1785. In the case of Buchanan's Lessee v. M'Clure, 1 Bin. 385, it was decided, that an improvement and settlement on lands purchased from the Indians, in November, 1768, made between that date and the opening of the land office, 3d of April, 1769, gave no preference to the settler, against a descriptive application entered in the office on the day it opened. The act of 30th December, 1786, which gives a right of pre-emption to settlers, is confined to the purchase in November, 1768, and limits that right to the 10th of April, 1788. The first law which recognises settlement rights on the lands purchased in 1784, was passed 22d of April, 1794,—3 Laws (Smith's Ed.) 184, 193,—and the kind of settlement is pointed out in the act of the 22d September, 1794. The right by settlement has its origin in the tacit permission of the proprietors, which, after a length of time, became a part of the common law of this state. But it always presumed an implied contract between the proprietor and the settler, that the latter claiming and holding the land under and in right of the proprietor, would, in a reasonable time, perfect his title, by paying the consideration and obtaining a patent. It never could extend to one who claimed adversely to the proprietor, and who for so long a period has taken no steps to perfect his title. This is precisely the case of the defendants, who took possession of these lands, claiming under Connecticut, and in open opposition to this commonwealth.

Mr. Tilghman, for defendants, admitted, that if the defendants settled this land, claiming a right to do so under Connecticut, that they could not succeed.

On this admission, THE COURT left this fact to the jury, with directions to find for the plaintiff, if they should be of opinion that the defendants claimed under Connecticut. Verdict for plaintiff.

---

## Case No. 7,643.

### KEENE v. JACKSON.

[2 Cranch, C. C. 166.] [1]

Circuit Court, District of Columbia. April Term, 1819.

LANDLORD AND TENANT— ATTACHMENT FOR RENT —DISCHARGE IN INSOLVENCY.

An attachment for rent not due, is superseded by the tenant's discharge under the insolvent law of the District of Columbia of the 3d of March, 1803, § 5 [2 Stat. 238].

This was an attachment for rent not due, under the Virginia act of 29th November, 1792, § 8, p. 154.

Mr. Swann, for plaintiff [Newton Keene], moved for judgment on the attachment. Since the attachment was served, and before the rent became due, the tenant, [J. W.] Jackson, was discharged under the insolvent law of the District of Columbia of 3d March, 1803.

Mr. Mason, for trustee of Jackson's effects, objected that the attachment was superseded by the discharge of the tenant under the insolvent act, § 5.

And THE COURT (THRUSTON, Circuit Judge, absent), being of that opinion, quashed the attachment.

---

KEENE (UNITED STATES v.). See Case No. 15,512.

---

## Case No. 7,644.

### KEENE v. WHEATLEY et al.

[9 Am. Law Reg. (1861) 33; 17 Leg. Int. 349; 4 Phila. 157; 5 Pa. Law J. Rep. 501.] [2]

Circuit Court, E. D. Pennsylvania.

THEATRES—PLAYS—COPYRIGHT — LITERARY PROPERTY —AUTHOR'S ASSIGNMENT — ADDITIONS TO MANUSCRIPT—PUBLICATION — PUBLIC PERFORMANCE—PLEADING IN EQUITY — AMENDED BILL— PLEAS.

1. A party asserting her literary proprietorship of an unprinted comedy, under an assignment to her by its author, complained of its theatrical representation by the defendants, without her consent. It had been composed in England for performance at a London theatre. Difficulties of adaptation preventing its performance there, it was thrown back on the hands of the author. He, subsequently, not being a citizen, or a resident of the United States, for a valuable consideration, transferred his proprietorship of it for the United States to the complainant, a resident of New York,

·[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [17 Leg. Int. 349, and 4 Phila. 157, contain only partial reports.]